**Joseph ZETTLER, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 88–1965.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 17, 1989.

Decided Aug. 8, 1989.*

Opinion Oct. 4, 1989.

---

* This appeal was originally decided by unpublished order on August 8, 1989. *See* Circuit

Howard B. Eisenberg, Southern Illinois University, School of Law, Carbondale, Ill., for petitioner.

Michael J. Denney, Dept. of Labor, Michael J. Rutledge, Dept. of Labor, Black Lung, Office of the Sol., Washington, D.C., for respondent.

Carla Chapman, Benefits Review Bd., Department of Labor, Washington, D.C.

Before EASTERBROOK, RIPPLE, and MANION, Circuit Judges.

PER CURIAM.

Black lung victim and former coal miner Joseph Zettler is totally disabled from pneumoconiosis. In 1986 the Administrative Law Judge (ALJ) found Zettler eligible for Black Lung Disability Trust Fund (Disability Fund) benefits retroactive to January 1, 1974. But in 1988 the U.S. Depart-

Rule 53. The Court has subsequently decided to issue the decision as an opinion.

ment of Labor Benefits Review Board (Review Board) modified the benefits award to establish the date from which benefits should be payable as the month Zettler had elected Reform Act review (April 1978).

The two questions presented on appeal are: (1) did the Director of the Officer of Workers' Compensation Programs (Director) waive any challenge relating to the onset date of Zettler's disability by failing to raise this issue before filing his motion for reconsideration after the ALJ's original decision?; and (2) was there substantial evidence supporting the ALJ's decision that Zettler had become totally disabled by pneumoconiosis before January 1974? Because this court answers the second question in the affirmative, we reverse.

## I.

Claimant-petitioner Joseph Zettler last worked as a coal miner in 1953, as a cutting machine operator for the Old Ben Coal Company. Zettler had at least twelve years of qualifying coal mine employment. He labored sporadically as a miner for several companies in the years before 1953, always underground. Zettler became a farmer after leaving mining, but abandoned farming during 1973 because he could no longer do farm work. Zettler has been short of breath since the time he worked in the mines. Zettler did not smoke. On July 13, 1971, Zettler filed a claim for benefits under the Black Lung Benefits Act with the Social Security Administration, which was denied.

When both the Social Security Administration and subsequently the Department of Labor denied his claim, Zettler requested a formal hearing which was held on February 6, 1986. In his March 27, 1986 Order, the ALJ found that Zettler first had become totally disabled in 1973, when he had been forced to abandon farming. Because benefits are not payable for periods before January 1, 1974, under 20 C.F.R. § 727.302(b), the ALJ awarded Zettler benefits to run from that date (onset date). The ALJ ordered the Disability Fund to pay Zettler's benefits, and his counsel's attorney's fee.

The Director moved for reconsideration of the date of the onset of Zettler's disability. The Director argued that the record fails to establish an onset date of disability, and that consequently benefits could not commence until April 1, 1978, the month during which Zettler elected review of his Social Security claim. The ALJ denied the Director's reconsideration motion and held that the record establishes 1973 as the date of disability onset.

## II.

The Director appealed to the Review Board the ALJ's original decision and order, and subsequent denial of reconsideration. On appeal, the Director contended that the ALJ's onset date of January 1, 1974, was unsupported by substantial evidence and not in accordance with law. Because the onset date issue had not been raised before the ALJ, Zettler responded that the Director had waived his right to contest that date. Zettler also contended that his own testimony had constituted substantial evidence supportive of the ALJ's finding of the onset date.

The Review Board decided that Zettler's election date of April 1, 1978, should control the payment of his benefits because the medical evidence had failed to demonstrate the date of total disability. The Review Board concluded that the Director had not waived his right to contest the onset date issue because it was Zettler's burden to produce medical evidence affirmatively establishing the onset date of total disability.

Zettler now petitions this court to reverse the Review Board's decision and to reinstate the ALJ's decision that Zettler has been disabled since January 1, 1974. The first issue before us on appeal from the Review Board is whether the Director waived any issue relating to the onset date of Zettler's disability by failing to raise it before the filing of the Director's motion for reconsideration. The second question of law for our resolution is whether there was substantial evidence supporting the

ALJ's decision that Zettler had become totally disabled by January 1974.

## III.

■ On appellate review, this court evaluates whether the decisions of the ALJ and the Review Board are rational, supported by substantial evidence, and consistent with applicable law. *Collins v. Old Ben Coal Co.*, 861 F.2d 481, 486 (7th Cir. 1988). Under 33 U.S.C. § 921(b)(3) (1982), as incorporated under 30 U.S.C. § 932(a), the factual findings in a decision under review by the Review Board must be conclusive if they have been supported by substantial evidence in the record considered overall. *Amax Coal Co. v. Fagg and Director, OWCP*, 865 F.2d 916, 917 (7th Cir. 1989).

■ While we necessarily review the entire record, we neither decide the facts anew nor substitute our own judgment for the ALJ's. Insofar as we interpret statutory and regulatory language, our review is a matter of law requiring *de novo* determination by this court. *Collins*, 861 F.2d at 486. The Review Board has the identical scope of review when sitting as an appellate panel reviewing decisions of the ALJ. *Id.* at 487. The Review Board must uphold a rational decision of the ALJ if supported by substantial evidence and in accordance with the law. *Id.* The Review Board may not set aside an inference merely because it questions the factual basis of the inference, or because it believes the opposite conclusion more reasonable. *Pancake v. Amax Coal Co.*, 858 F.2d 1250, 1255 (7th Cir. 1988).

## A.

Zettler contends that the Director waived his right to contest the onset date of Zettler's presumed disability by failing to raise this issue before or during the administrative hearing. The administrative hearing must be confined to those contested issues which have been identified by the Deputy Commissioner, or any other issues raised in writing before the Deputy Commissioner. 20 C.F.R. § 725.463(a). Under 20 C.F.R. § 725.463(b) no new issue can be raised following the ALJ's decision:

> An administrative law judge may consider a new issue only if such issue was not reasonably ascertainable by the parties at the time the claim was before the deputy commissioner. Such new issue may be raised upon application of any party, or upon an administrative law judge's own motion, with notice to all parties, at any time after a claim has been transmitted by the deputy commissioner to the Office of Administrative Law Judges and *prior to decision by an administrative law judge....* (emphasis added).

The Director contends he need not raise the onset date of total disability due to pneumoconiosis issue until the initial finding of entitlement to benefits. Only when the ALJ issued his decision and order awarding Zettler benefits was it possible to raise the issue of the specific date from which Zettler's entitlement ran, and the Director's motion for reconsideration preserved this issue for appellate review.

The Director acknowledges that under § 725.463 an ALJ generally is prohibited from considering issues not previously raised before the Deputy Commissioner. But the Director contends that under 20 C.F.R. § 727.302 the determination of whether the evidence of record establishes the date of onset of disability due to pneumoconiosis, and so the date from which benefits are payable, is reached only after a claim is reviewed and approved.[1] Section 727.302(a) provides that "any individual whose claim is *approved* after review shall be awarded benefits on a retroactive basis for a period which begins no earlier than January 1, 1974." (Emphasis added.) Section 727.302(c)(1) provides that in the case of a miner whose claim is reviewed and "finally approved," benefits are payable for

---

1. The Director also relies upon 20 C.F.R. § 725.501:

   The provisions of this subpart govern the payment of benefits to claimants whose claims

   are approved for payment under section 415 and Part C of Title IV of the act or approved after review under section 435 of the act and Part 727 of this subchapter.

all periods of eligibility beginning with the month of onset of total disability due to pneumoconiosis or January 1, 1974, whichever is later. Section 727.302(f) provides:

> For the purposes of this section, the term "finally approved" means that an award of benefits has been made or affirmed by a deputy commissioner, administrative law judge, the Benefits Review Board, or a U.S. court of appeals, that no further hearing, appeal, or reconsideration is pending, and the time to request such hearing, appeal, or reconsideration has expired....

Besides, the Director in accordance with § 725.463 did contest before the ALJ whether Zettler was totally disabled due to pneumoconiosis at the time of the hearing. The Review Board previously had held that the relevant inquiry is whether a claimant is disabled as of his hearing date. See *Cooley v. Island Creek Coal Co.*, 845 F.2d 622, 624 (6th Cir.1988), citing *Coffey v. Director OWCP*, 5 BLR 1–404, 1–405 (1982). The Director says he implicitly contested (for fixing retroactive benefits) whether Zettler had become totally disabled *before* his hearing. Zettler supposedly was on notice that the onset date question was subject to adjudication.[2]

What actually is implicit in the Director's argument before this court is that the disability onset date must automatically be at issue in every case, although listed as a contested issue in none. But we need not decide the merits of Zettler's contention that the Director waived his right to contest the onset date of Zettler's disability by failing to raise this issue before or during the administrative hearing. Even if the Director has not waived the issue, our review of this case demonstrates that substantial evidence supports the ALJ's finding that Zettler became totally disabled due to pneumoconiosis before January 1974.

### B.

█ Under 20 C.F.R. § 727.203(a)(1), a miner who engaged in coal mine employment for a minimum of ten years "will be presumed to be totally disabled due to pneumoconiosis" arising from that employment if an X-ray merely "establishes the existence of pneumoconiosis."[3] As precedent cited by the Director explains:

> When the presumption under § 727.203(a)(1) is triggered, it is presumed that the claimant is disabled by reason of pneumoconiosis, not simply that the claimant has pneumoconiosis. In order to rebut this presumption under § 727.203(b)(2) the Director must produce evidence showing that the claimant is able to do his usual coal mine work or comparable and gainful work,....

*Cooley*, 845 F.2d at 624, citing *York v. Benefits Review Board*, 819 F.2d 134, 138 (6th Cir.1987).

Citing 20 C.F.R. § 727.203(a)(1), the ALJ here found in his original decision that the record contained three X-ray readings. Two of these were positive for pneumoconiosis, and one of the positive readings was on August 24, 1971. The ALJ's order denying reconsideration reiterated that there

---

2. The Review Board held that the Director had not waived his right to contest the issue of onset because it was Zettler's burden to produce medical evidence affirmatively establishing the total disability onset date. But in this court the Director expressly disavows this rationale for the Board's decision as somewhat misleading. That a claimant bears the burden of proof on any issue does not necessarily preclude the waiver by his opponent of the opponent's right to contest it. Since the Director disclaims the Review Board's rationale, we will not analyze it further.

3. Because Zettler's application was filed before March 30, 1980, this case is governed by the interim regulations appearing at Part 727 of Title 20, Code of Federal Regulations. 20 C.F.R. § 718.2. In *Pittston Coal Group v. Sebben,* — U.S. ——, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988), the Supreme Court found that the Secretary of Labor's interim regulation appearing at 20 C.F.R. § 727.203 violated the Black Lung Benefits Reform Act of 1977, as amended, appearing at 30 U.S.C. § 902(f). But "central" to the *Sebben* opinion was that under the interim regulation a miner could not obtain his first presumption of entitlement to benefits *without* ten years of coal mine service. *Id.,* 109 S.Ct. at 418–19. The *Sebben* decision is not controlling here. The only questions of law before us are whether the Director had waived the issue of the onset date of Zettler's disability, and whether there was substantial evidence supporting the finding of Zettler's total disability.

had been X-ray "evidence of pneumoconiosis," before 1974.

For the evidence establishes that the claimant had pneumoconiosis as early as 1971. His testimony that his physical problems including shortness of breath made it impossible for him to continue to work sometime in 1973, taken in conjunction with the x-ray evidence of pneumoconiosis at that time, establishes 1973 as the date of onset of disability.

Under 20 C.F.R. § 727.203(b), an interim presumption established under § 727.203(a)(1) can be rebutted considering all relevant medical evidence. But the ALJ's original decision expressly found that the record had failed to establish any § 727.203(b) element of rebuttal. His order denying reconsideration reiterated: "[U]nder the interim presumption, claimant is presumed to be totally disabled, and no rebuttal evidence for the period subsequent to claimant's retirement has been produced."

Yet the Review Board concluded that the medical evidence failed to establish the date of total disability. It therefore held that Zettler's election date established the onset date for paying his benefits. The Review Board did so in a discussion devoid of citation to any Supreme Court, circuit court, or statutory authority whatsoever, and similarly devoid of any citation to regulatory authority controlling the sufficiency of evidence question.[4]

## C.

The Director presents his own argument, likewise devoid of statutory or controlling regulatory authority, that a chest X-ray alone does not establish that the disease has progressed to total disability as of the date of the film. The Director cites *Wetherill v. Director, OWCP*, 812 F.2d 376 (7th Cir.1987), for the proposition that a chest X-ray is generally not diagnostic of the degree of respiratory or pulmonary impairment present in a miner.

In *Wetherill*, the petitioner relied upon X-ray readings under 20 C.F.R. § 727.203(a)(1) for an interim presumption of black lung benefits eligibility. *Id.* at 378, 381. But in *Wetherill* those X-ray readings did not overcome the employer's rebuttal evidence that the petitioner's disability was caused by a heart condition and not by pneumoconiosis. *Id.* at 381. In *Wetherill* the uncontroverted medical evidence established that the petitioner's symptoms and disability were caused by heart disease. *Id.* Here, the ALJ instead explicitly found the record devoid of any employer evidence rebutting Zettler's X-ray readings evidencing pneumoconiosis.

The Director also cites *Perkins v. Ryans Creek Coal Co., Inc.*, 2 BLR 1–214 (1979), as authority that a chest X-ray is generally not diagnostic of the level of a miner's respiratory or pulmonary impairment. But in *Perkins*, the claimant was denied benefits by the hearing officer and the Review Board remanded for ALJ redetermination of the question of total disability due to pneumoconiosis. *Id.* at 1–215 and 1–220. In denying benefits, the hearing officer had failed to tie his analysis of the case to any specific regulatory requirement or statutory provision: "Since there is no indication of what statutory or regulatory criteria were applied to determine whether the claimant is totally disabled due to pneumoconiosis, the Board is unable to determine whether such criteria were properly applied." *Id.* at 1–217. Therefore, *Perkins* cannot constitute persuasive authority countering Zettler's medical evidence under 20 C.F.R. § 727.203(a)(1).

The Director cites *Gottke v. Director, OWCP*, 6 BLR 1–1300 (1984), for the proposition that a chest X-ray establishes only the existence of pneumoconiosis, and does not in itself establish that pneumoconiosis has progressed to total disability as of the

---

4. The Benefits Review Board did cite 20 C.F.R. § 725.503. Section 725.503(b) provides:

In the case of a miner who is totally disabled due to pneumoconiosis, benefits are payable to such miner beginning with the month of onset of total disability. Where the evidence does not establish the month of onset, benefits shall be payable to such miner beginning with the month during which the claim was filed, or the month during which the claimant elected review under Part 727 of this subchapter.

date of the film. While there is language to that effect in *Gottke, id.* at 1–1302, the X-ray interpretations in that case stood alone. The Review Board decided against that claimant because the record contained no evidence sufficient to establish a date of the onset of total disability. The Review Board nevertheless carefully distinguished *Gottke* from situations where X-ray interpretations establish the presence of pneumoconiosis to ascertain when it has progressed to total disability *in conjunction with additional evidence,* or at least "with other medical evidence." *Id.* Here, Zettler used X-ray interpretations to establish the presence of pneumoconiosis toward determining the date of total disability, and his X-ray evidence was applied in conjunction with his own testimonial evidence.

The Director quotes *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 7, 96 S.Ct. 2882, 2888, 49 L.Ed.2d 752 (1976), that simple "pneumoconiosis, ordinarily identified by X-ray opacities of a limited extent, is generally regarded by physicians as seldom productive of significant respiratory impairment." But Zettler's X-ray evidence was presented in tandem with Zettler's personal testimony evidencing his pre–1974 disability.

### D.

The Director adds that the use of a living miner's testimony alone to establish total disability is specifically prohibited. 20 C.F.R. § 718.204(d)(2). The Director cites *Plutt v. Benefits Review Board,* 804 F.2d 597 (10th Cir.1986), for the proposition that lay testimony cannot be combined with a medical diagnosis of pneumoconiosis to establish total disability.

However, in *Plutt* claimant-petitioner Joseph Plutt attempted to combine his own testimony of total disability with a physician's finding of pneumoconiosis to equal totally disabling pneumoconiosis under § 727.203(a)(4). Under § 727.203(a)(4),[5] by contrast with the X-ray evidence offered by Zettler under § 727.203(a)(1),[6] a miner may establish a rebuttable presumption of pneumoconiosis by other medical evidence (including the documented opinion of a physician of the presence of a totally disabling pulmonary or respiratory impairment). *Plutt* held that a claimant could not combine his testimony of total disability with a physician's finding of pneumoconiosis to equal totally disabling pneumoconiosis, because a claimant's total disability must be established through the medical evidence itself. *Id.* at 599. Claimant Plutt's medical report did not itself support total disability due to pneumoconiosis, the doctor's diagnosis being mild chronic bronchitis productive of mild disability. *Id.* As *Plutt* explained, § 727.203(a)(4) specifies that the requisite medical evidence must itself establish the claimant's total disability. This is not demanded of Zettler's X-ray evidence by § 727.203(a)(1). The positive X-ray (coupled with the 10 years' work in the mines) well establish the rebuttal presumption of pneumoconiosis disability.

Claimant Plutt lacked any of the medical evidence required under § 727.203(a)(1) through (4). *Id.* at 598–99. Zettler did present such evidence. *Plutt* does stand

---

**5.** Section 727.203(a)(4) provides:

*Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following *medical requirements* is met:

\* \* \* \* \* \*

(4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment;

**6.** Section 727.203(a)(1) provides:

*Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis....

for the proposition that: "Lay testimony *alone* cannot establish total disability." (Emphasis added.) *Id.* But Zettler did not rely upon his own lay testimony alone to establish total disability; as explained by the ALJ, Zettler presented his own credible testimony *in conjunction with* X-ray evidence.

The Director similarly relies upon *Peabody Coal Co. v. Director, OWCP,* 581 F.2d 121 (7th Cir.1978), for the proposition that lay testimony alone is insufficient to establish the legal presumption of pneumoconiosis. While reliance upon *Peabody Coal* for that proposition is accurate, *id.* at 123, in *Peabody Coal* we found that the record as a whole included no substantial evidence of total disability. *Id.* at 124. Indeed, this court explained: "There is no doubt in our mind that the hearing officer either simply misunderstood or deliberately misrepresented the medical evidence, which, when considered as a whole, clearly established (1) that the claimant was not suffering from a disabling pulmonary disease, and (2) that the claimant was not suffering from pneumoconiosis." *Id.* at 123–24.

But Zettler does not attempt to establish from his lay testimony alone that he is suffering from totally disabling pneumoconiosis. He has presented the necessary X-ray evidence. Substantial evidence supports the ALJ's finding that Zettler had become totally disabled due to pneumoconiosis before January 1974.

Accordingly, the judgment of the Review Board is

REVERSED.